UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CLARENCE D. SCHREANE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:20-cv-00044-JPH-MJD |
| ) | |
| T.J. WATSON, ) | |
| ) | |
| Respondent. ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

On January 22, 2020, Clarence D. Schreane filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a disciplinary proceeding that commenced with Incident Report No. 3239920. Dkt. 1. The respondent filed a return to order to show cause on April 3, 2020, dkt. 10, and Mr. Schreane replied on April 27, 2020, dkt. 13. For the reasons explained in this Entry, Mr. Schreane's habeas petition is **denied**.

**A.   Facts & Background**

On March 31, 2019, Officer Cox prepared Incident Report No. 3239920, charging Mr. Schreane with a violation of Code 113, possession of narcotics. The incident report, written at approximately 1:45 pm, stated that the following occurred at approximately 12:05 pm:

> On March 31, 2019, I officer M. Cox was making rounds in the A-1 unit when I witnessed two inmates in cell 130 separating several small pieces of white paper on their desk. As I entered the cell inmate [redacted] Reg. No. [redacted] [Schreane's cell-mate] was sitting at the desk wrapping smaller pieces of white paper in to little square packets. Inmate Schreane, Clarence, Reg. No. 17956-074 took some of the white paper and put it into his right front pocket. The items were secured and escorted to the Lt's office for testing.
>
> On March 31, 2019, I gave the substance to be tested to Lt. Edwards. Lt. Edwards

> tested the substance with the NIK test kits "A" and "U." The NIK Test kit "A" transitioned from an orange color to a brown color. The substance was then tested using the NIK Test Kit "U." The NIK Test Kit "U" produced a maroon in color result. According to the Identidrug Chart for the NIK Poly testing system, this is a positive result for amphetamines.

Dkt. 10-1 at 24.

At approximately 4:00 p.m., Lt. McPherson began an investigation, and he advised Mr. Schreane of his rights at 5:15 p.m. *Id.* at 21, 25. During this investigation, Mr. Schreane was provided a copy of Incident Report No. 3239920, and the Report was read to him. *Id*. at 25. When asked, Mr. Schreane refused to state if the incident report was true or false. *Id*. Mr. Schreane declined the opportunity to provide a statement other than to ask for a different hearing officer. *Id.* at 24–25.

On April 1, 2019, a Unit Disciplinary Committee ("UDC") hearing was conducted, and Mr. Shreane was advised of his rights. *Id.* at 21, 24. The UDC referred the charge to the Discipline Hearing Officer ("DHO") for a hearing. *Id.*

On May 2, 2019, at approximately 1:51 p.m., DHO J. Bradley conducted a hearing regarding Incident Report No. 3239920. *Id.* at 4, 22. Mr. Schreane acknowledged he understood his due process rights. *Id.* DHO Bradley confirmed that Mr. Schreane had received a copy of the incident report. *Id*. at 4. In the hearing, Mr. Schreane requested a staff representative and waived his right to witnesses. *Id.* The staff representative provided Mr. Schreane's statements to the DHO, and witnesses provided their statements via email. *Id*.

DHO Bradley considered the incident report, statements from Mr. Schreane and his cellmate, Lt. Edward's staff memorandum confirming the NIK Poly test results indicating the presence of amphetamines, and photographic evidence of the positive test. *Id.* at 4, 22. DHO Bradley drew a negative inference from Mr. Schreane's refusal to provide a statement to the

2

investigating Lieutenant. *Id*. at 22.

DHO Bradley considered Mr. Schreane's written statement, in which he argued the reporting officer "was showing favoritism on who he chose to write up and search at the time of the incident." *Id*. DHO Bradley also considered a statement from Mr. Schreane's cellmate that "I wasn't doing anything. Schrene [sic] grabbed it off the table when the CO came in, but a third person brought it into the cell. He isn't here anymore. I think he has been let out." *Id*.

DHO Bradley considered Mr. Schreane's statement that, "some inmate named KD went to my cell. He pulled something out of his sock and put it on the desk. Cox came in and put us on the wall. They let KD go." *Id*. Mr. Schreane could not provide KD's name or whereabouts. *Id*.

DHO Bradley found that Mr. Schreane failed to make consistent statements regarding his defense throughout the disciplinary process. *Id*. at 23. He also believed that Mr. Schreane purposefully delayed requesting surveillance video until the time of the hearing so it would no longer exist. *Id*.

DHO Bradley stated that "[t]he reporting officer clearly witnessed you grab the drugs and place them in your pocket." *Id*. The DHO found the officer more credible than Mr. Schreane. *Id.* Based on the evidence, DHO Bradley found that on March 31, 2019, Mr. Schreane committed the prohibited act of possession of drugs, Code 113. *Id*. Sanctions of disallowance of 41 days good time credit, loss of phone and commissary privileges for 180-days, and a change of quarters, were imposed. *Id*.

### B.     Legal Standards

"Federal inmates must be afforded due process before any of their good time credits—in which they have a liberty interest—can be revoked." *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). "In the context of a prison disciplinary hearing, due process requires that the prisoner

3

receive (1) written notice of the claimed violation at least 24 hours before [a] hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.*; *see also Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570–71 (1974). In addition, "some evidence" must support the guilty finding. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Jones,* 637 F.3d at 845.

### C. Analysis

Mr. Schreane's disciplinary hearing satisfied the requirements imposed by the Due Process Clause. First, Mr. Schreane received written notice of the claimed violation at least 24 hours before the disciplinary hearing on May 2, 2019. *See Jones,* 637 F.3d at 845. He received "advanced written notice of [the] charge" on March 31, 2019, and the disciplinary hearing was not held until May 2, 2019. *See* dkt. 10-1 at 21; *id.* at 25 ("Inmate Schreane . . . was provided and accepted a copy of this Incident Report . . . . [and] was read the body of this Incident Report in English."); *id.* at 28–29 (Mr. Schreane's signatures on notice forms dated April 1, 2019); *id.* at 4, 22 (May 2 disciplinary hearing).

Mr. Schreane also had an opportunity to call witnesses. *See Jones,* 637 F.3d at 845; *see, e.g.*, *id.* at 28 (Mr. Schreane's signature on form stating that he had "[t]he right to call witnesses"). While Mr. Schreane was "advised he could request witnesses," *id.* at 4, he chose not to do so, *see id.* at 21–22 (stating that Mr. Schreane "waived right to witness" and "requested no witnesses"); *id.* at 29 (Mr. Schreane's signature on form stating that he did not "wish to have witnesses"); *id.* at 25 ("The inmate did not request witnesses be interviewed . . . .").

Mr. Schreane also had an opportunity to and did present documentary evidence to an

4

impartial decision-maker. *See Jones,* 637 F.3d at 845. A "staff representative provided his statements" to the hearing officer. Dkt. 10-1 at 4, 22 ("[Y]ou presented a written statement to the DHO."). Mr. Schreane argues that the hearing officer's failure to consider surveillance video of the incident violated his due-process rights. *See* dkt. 2 at 4–5; dkt. 13 at 6. But Mr. Schreane did not request video evidence until the May 2, 2019 hearing—over one month after the incident occurred on March 31, 2019. *See* dkt. 10-1 at 23 ("You did not make your defense . . . and video request until your DHO hearing."); *see* dk. 1-1 at 4 (Mr. Schreane stating that "the surveillance video [was] in fact requested at the DHO" hearing). By the time Mr. Schreane requested the video at the hearing on May 2, 2019, it was unavailable. *See* dkt. 10-1 at 21; dkt. 10 at 4 n.3 (describing 10-day retention policy). "The DHO believe[d] that [Mr. Schreane] waited to make [his] defense, so staff could not corroborate [his] statement using video." Dkt. 10-1 at 23.

But even if Mr. Schreane had timely requested video evidence, he has not explained how the video would undermine the hearing officer's finding that he possessed drugs. *See Jones,* 637 F.3d at 847 (holding no due process violation because the disputed evidence would not "undermin[e] or contradict[]" the factual findings and was thus "not exculpatory" and "would not have changed the outcome of the DHO hearing"). Mr. Schreane argues that the video would show a third party enter his living quarters with contraband and slip out without detection. *See* dkt. 2 at 5. But Mr. Schreane does not argue that the video undermines or contradicts the DHO's finding that an officer later "witnessed [Mr. Schreane] grab the drugs and place them in [his] pocket." Dkt. 10-1 at 23; *see also id.* at 22 (cellmate's statement that Mr. "Schre[a]ne grabbed it off the table when the CO came in . . . ."). Mr. Schreane has thus not shown "how [the] new evidence would have helped him" at the disciplinary hearing or "how he was prejudiced" by its absence. *See Reed v. Bell*, 799 F. App'x 930, 933 (7th Cir. 2020) (citation omitted).

5

Mr. Schreane also argues that Officer Bradley was not an impartial decisionmaker because he allegedly made a comment that Mr. Schreane "was the one with the cigarett[e] butts." Dkt. 2 at 3–4; dkt. 13 at 2. Without additional context, this comment does not suggest bias. Moreover, disciplinary hearing officers "are entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Here, there is no evidence rebutting that presumption.

Finally, Mr. Schreane received "a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *See Jones,* 637 F.3d at 845. The hearing officer provided Mr. Schreane with a written "Discipline Hearing Officer Report" stating that he considered Mr. Schreane's statement, his cellmate's statement, the incident report, a staff memorandum, the witnessing officer's observations, and photo evidence. Dkt. 10-1 at 22–23. This Report also included a section on the "Reason for Each Sanction or Action Taken," which explained that the sanctions were required because of the "gravity of the infraction" involving drug possession and the need for deterrence. *Id.* at 23. This explanation is enough. *See Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("We have repeatedly upheld the sufficiency of written statements that indicate only what evidence was relied on to make the decision, and why.").

Mr. Schreane argues that the evidence relied on was insufficient to support the violation because the substance he was charged with possessing was not present at the hearing and the method used to test the substance was "known to be inadequate." Dkt. 2 at 4–6. However, "a prison may discipline an inmate by reducing good-time credit unless the record is devoid of evidence." *Crawford v. Littlejohn*, 963 F.3d 681, 682 (7th Cir. 2020). Stated differently, there must be "some evidence in the record" to support the discipline. *Id.* "Once th[is] meager threshold has been crossed, [the] inquiry ends," and the disciplinary decision will not be reversed. *Scruggs*, 485 F.3d

6

at 941. Here, the incident report, a staff memorandum, the witnessing officer's observations, the cellmate's statement, and photo evidence, exceed the "some evidence" standard necessary to uphold the disciplinary decision. Because Mr. Schreane had fair notice, an opportunity to call witnesses and present documentary evidence to an impartial decision-maker, and received a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action, he received all the process he was due. *See Jones,* 637 F.3d at 845.

Yet Mr. Schreane contends that additional procedures were required. *Cf. Crawford*, 963 F.3d at 683 ("We have been told not to add procedures" to the list set out in *Wolff*, 418 U.S. at 570–71). Mr. Schreane argues that his requested staff representative did not review the surveillance videotape and investigative reports, did not ask for the substance to be tested by a laboratory, did not follow Mr. Schreane's request to seek an alternate hearing officer, and was not available to meet with him early enough. *See* dkt. 2 at 3 (referencing 28 C.F.R. § 541.8); dkt. 13 at 2. The referenced regulation requires a staff representative to attend the DHO hearing if requested, but the other duties are discretionary. *See* 28 C.F.R. § 541.8(d)(2) ("The staff representative *may* also assist [an inmate] by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping [an inmate] prepare evidence for presentation at the DHO's hearing.") (emphasis added). More importantly, the regulation's procedures are not coextensive with the procedures required by *Wolff* and the U.S. Constitution. Under *Wolff*, a staff representative is only required if the inmate is illiterate or is in serious need of assistance to defend himself, and Mr. Schreane has not argued that he meets these standards. 418 U.S. at 570 ("Where an illiterate inmate is involved . . . or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form

of help from the staff or from a sufficiently competent inmate designated by the staff"). The staff representative's actions thus did not violate Mr. Schreane's right to due process.

Mr. Schreane separately contends that aspects of his administrative detention did not meet the deadlines required by regulation. *See* dkt. 2 at 3, 6; *see* 28 C.F.R. §§ 541.25–26. This argument is not based on his loss of good-time credits, so Mr. Schreane necessarily contends that there is "a separate liberty interest in the time frames set forth in § 541[]." *See* Jones, 637 F.3d at 846. But "[n]oncompliance with § 541 . . . amounts to a due process violation only if th[e] regulations create a liberty interest," and "[p]rison regulations give rise to a liberty interest only if they shield inmates from 'atypical or significant hardship' in relation to the ordinary incidents of prison life." *Id.* (citation omitted). Nothing in the record suggests that "[t]he delays at issue . . . impose[d] an 'atypical or significant hardship' on [Mr. Schreane] warranting due process protection." *See id.* Without "such 'atypical and significant deprivations, the procedural protections of the Due Process Clause w[ere] not . . . triggered." *Id.*

In sum, Mr. Schreane was given adequate notice, an opportunity to defend the charge, and a written statement of the reasons for the finding of guilt and the evidence considered. Under these circumstances, there was no violation of Mr. Schreane's due process rights.

### D.     Conclusion

For the reasons discussed above, Mr. Schreane's petition for a writ of habeas corpus relating to Report No. 3239920 is **denied** and the action **dismissed**. Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 5/20/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CLARENCE D. SCHREANE
17956-074
TERRE HAUTE (33)
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov